1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SMITH SAESEE, | ) | 1:10-cv—0814-AWI-SKO-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS TO |
| | ) | DENY THE PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS (DOC. 1) |
| v. | ) | |
| | ) | FINDINGS AND RECOMMENDATIONS TO |
| TIM VIRGA, Warden, | ) | ENTER JUDGMENT FOR RESPONDENT AND |
| | ) | TO DECLINE TO ISSUE A CERTIFICATE |
| Respondent. | ) | OF APPEALABILITY |
| | ) | |
| | ) | **OBJECTIONS DEADLINE:** |
| | ) | **THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is the petition, which was filed on May 11, 2010, and amended to name a proper respondent on September 16, 2010. Respondent served and filed an answer on December 15, 2010. Petitioner did not file a traverse.

I.  Jurisdiction

Because the petition was filed after April 24, 1996, the

1

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his right to due process of law. Thus, violations of the Constitution are alleged. The conviction challenged arises out of the Tulare County Superior Court (TCSC), which is located within the jurisdiction of this Court. 28 U.S.C. §§ 2254(a), 2241(a), (d).

On December 15, 2010, Respondent's counsel filed a notice of appearance for Respondent Tim Virga, Warden of the California State Prison at Sacramento, California, where Petitioner is confined. Petitioner has thus named as a respondent a person who has custody of the Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules). See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

Accordingly, this Court has subject matter jurisdiction over this action and in personam jurisdiction over Respondent Virga.
///

II.   <u>Procedural Summary</u>

On July 20, 2007, in TCSC case number VCF165822, a jury convicted Petitioner of committing mayhem in violation of Cal. Penal Code § 203, discharging a firearm at an occupied building in violation of § 246, assault with a semiautomatic firearm in violation of § 245(b), and being a felon in possession of a firearm in violation of § 12021(a)(1)).  The jury also found to be true special allegations that Petitioner committed each of the four offenses for the benefit of, at the direction of, or in association with a criminal street gang within the meaning of Cal. Penal Code § 186.22(b).  The jury further found to be true with respect to the first three offenses special allegations that Petitioner either personally used, or personally and intentionally discharged, a firearm and proximately caused great bodily injury within the meaning of Cal. Penal Code §§ 12022.5(a), 12022.53(c) & (d), and 12022.7(a)).  (1 CT 260-265.)

On September 6, 2007, the TCSC sentenced Petitioner to thirty-one (31) years and eight (8) months to life in state prison.  (1 CT 285-286.)

Petitioner appealed the judgment to the California Court of Appeal, Fifth Appellate District (DCA) in case number F053845.  After the parties filed their respective briefs, the court affirmed the judgment for reasons stated in an opinion filed on May 1, 2009.  (LD D-G.)[1]

///

---

[1] "LD" refers to documents lodged by Respondent.

3

Petitioner filed a petition for review in the California Supreme Court in case number S173367.  (LD H.)  The court denied the petition without a statement of reasoning or authority on July 8, 2009.  (LD I.)

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2254 on May 11, 2010.  (Doc. 1.)

III.  Facts

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  The following factual summary is taken from the opinion of the DCA in People v. Smith Saesee, case number F053845.  See, Galvan v. Alaska Dep't. Of Corrections, 397 F.3d 1198, 1199 n.1 (9th Cir. 2005) (setting forth a factual summary from the state appellate court's decision).

> On June 12, 2006, Saesee, a member of the Oriental Troop (OT) street gang, shot Matthew Fernandez, a member of the North Side Vica (NSV) street gang, at a Visalia gas station/mini-mart. The gas station had been the site of several altercations between rival street gang members. The gas station's multi-camera surveillance system recorded the incident; the recording, which included superimposed time stamps, was admitted into evidence at trial.

> The video recording shows that at 11:32 p.m., Saesee and his 16-year-old girlfriend, Eeshin Seechan, entered the mini-mart. The two argued at the front of the store, walked to the back of the store, took some alcohol, and brought it to the front counter. Their friend, Chala See, also went into the store, while Chala's girlfriend, Theeda See, waited for them in the car she was driving. When the three did not immediately come out of the store, Theeda went into the store and

4

told Chala to go to the car. Theeda and Chala went back out to the car and waited.

At 11:34 p.m., a vehicle carrying Fernandez, Jaime Hernandez, Samuel Mendoza, and Frank Apalategui stopped at a gasoline pump outside the store. The group got out of the car and walked towards the store. While Saesee was paying for the alcohol, Seechan left the store and returned to the car where Chala and Theeda were waiting. She saw the four guys walk towards the store. When she got to the car, she told Chala to go inside the store and help Saesee.

The four guys walked into the store just as Saesee finished his transaction. Hernandez, wearing a white shirt, walked in first; Fernandez, wearing a red shirt, was second; Mendoza, wearing a numbered sports jersey, was third; and Apalategui, wearing a gray shirt, was last. Chala, wearing a white shirt, immediately followed the group inside.

Saesee and Fernandez challenged each other to identify their gang affiliations. Saesee identified himself as a member of the OT street gang, while Fernandez identified himself as a member of the NSV street gang. Chala walked up from behind Saesee and punched Fernandez on the side of the head, knocking him to the ground. Fernandez and Apalategui charged at Chala who, along with Saesee, went outside the store. Apalategui and Mendoza pursued Saesee and Chala outside, while Fernandez stood in the doorway. While outside the store, Saesee pulled out a gun. Apalategui ran back into the store, while Fernandez and Mendoza, who had been holding the store's door open, backed up into the store. As the door was closing, Saesee, who was standing outside the store, fired a single shot into the store through the door's opening. The bullet struck Fernandez, who fell to the floor.

Saesee, Chala and Seechan ran to the car Theeda was driving and got in it. As Theeda was driving away, Saesee put half of his body out of the window; Theeda thought he was going to shoot at the store again. According to Theeda, Saesee said if anybody "fucks with him, they get a bullet. He don't care about nobody." Saesee stopped when Chala said "Look, there's the cop. Don't shoot."

Dr. Roberta Zulim treated Fernandez at the hospital. The bullet entered Fernandez's chest, went through his lung, diaphragm, stomach, aorta, and vertebrae, transecting part of his spinal cord and exiting through his back. The shooting left him with permanent paralysis and Dr. Zulim considered it a miracle that he survived.

5

Visalia Police Officer Gilbert Torres found a spent chrome shell casing outside the store's front door. According to Officer Torres, a semiautomatic handgun, not a revolver, would eject a shell casing and the shell casing suggested a semiautomatic handgun was used. Officer Torres explained that there is a top metal slide on top of a semiautomatic weapon that moves back and forth very quickly when a shot is fired, chambering another round. When a semiautomatic weapon is loaded by putting in a magazine, the slide can be pulled back, which will extract a bullet from the magazine and slide it into the chamber. If a round is already chambered and the slide is pulled back, a round will be ejected and another chambered.

James Potts, a Visalia Police Department identification technician, found a bullet hole on the outside of a box of honey buns on a display rack inside the store. He found a .38 caliber bullet inside the box, which was consistent with the shell casing found outside the store. Potts collected the spent casing that was found in the front of the store, which had a small indentation caused by the gun's firing pin. The casing was a .38 caliber "Win" (Winchester). Inside the vehicle Theeda was driving that night, Potts found two live bullets on the right-side rear passenger floorboard area where Saesee had been sitting. Potts did not find any fingerprints on the bullets or the spent shell casing. The bullets and shell casing were all the same brand—"Win .38 Super Auto Plus P."

Theeda testified that while they were driving to the store, Saesee pulled out a handgun during a dispute with Chala and pointed it at him. Theeda did not know if the handgun was a revolver or a semiautomatic; while she knew what a revolver was, she did not know what a semiautomatic handgun was. Theeda confirmed the gun Saesee had was the kind with a clip that goes into the handgrip. She saw Saesee twice pull back on something on top of the gun with his hand using a sliding motion; it made a clicking sound, which Theeda told a detective the day after the shooting was like racking a round.

Frank Arnold, a district attorney investigator, went to the gas station to measure the location where the shooter and victim were standing at the time of the shooting, based on the videotape of the incident. Arnold determined the shooter was standing on the cement entranceway, which is a sidewalk area, and the victim was standing inside the store; the distance between the two was 21 feet, two and a half inches.

Visalia Police Officer Luma Fahoum opined that a hypothetical crime committed under circumstances similar to the evidence in the present case would have

been committed for the benefit of the OT criminal street gang with the specific intent to promote the gang's criminal conduct.

(LD G, 3-6.)

IV.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000). It is thus the governing legal principle or principles set forth by the Supreme Court at the pertinent time. Lockyer v. Andrade, 538 U.S. 71-72.

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court need not have cited Supreme Court precedent or have

7

1  been aware of it, "so long as neither the reasoning nor the
2  result of the state-court decision contradicts [it]." Early v.
3  Packer, 537 U.S. 3, 8 (2002).  A state court unreasonably applies
4  clearly established federal law if it either 1) correctly
5  identifies the governing rule but then applies it to a new set of
6  facts in an objectively unreasonable manner, or 2) extends or
7  fails to extend a clearly established legal principle to a new
8  context in an objectively unreasonable manner. Hernandez v.
9  Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529
10  U.S. at 407.  An application of clearly established federal law
11  is unreasonable only if it is objectively unreasonable; an
12  incorrect or inaccurate application is not necessarily
13  unreasonable. Williams, 529 U.S. at 410.

14  A state court's determination that a claim lacks merit
15  precludes federal habeas relief as long as fairminded jurists
16  could disagree on the correctness of the state court's decision.
17  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).
18  Even a strong case for relief does not render the state court's
19  conclusions unreasonable.  Id.  To obtain federal habeas relief,
20  a state prisoner must show that the state court's ruling on a
21  claim was "so lacking in justification that there was an error
22  well understood and comprehended in existing law beyond any
23  possibility for fairminded disagreement."  Id. at 786-87.  The
24  standards set by § 2254(d) are "highly deferential standard[s]
25  for evaluating state-court rulings" which require that state-
26  court decisions be given the benefit of the doubt, and the
27  Petitioner bear the burden of proof. Cullen v. Pinholster, 131
28  S. Ct. at 1398.  Further, habeas relief is not appropriate unless

1  each ground supporting the state court decision is examined and

2  found to be unreasonable under the AEDPA. Wetzel v. Lambert, -

3  -U.S. -- ,-- S.Ct. --, 2012 WL 538281, *3 (No. 11-38, Feb. 21,

4  2012).

5      In assessing under section 2254(d)(1) whether the state

6  court's legal conclusion was contrary to or an unreasonable

7  application of federal law, "review... is limited to the record

8  that was before the state court that adjudicated the

9  claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398.

10  Evidence introduced in federal court has no bearing on review

11  pursuant to § 2254(d)(1). Id. at 1400. Further, as previously

12  noted, 28 U.S.C. § 2254(e)(1) provides that in a habeas

13  proceeding brought by a person in custody pursuant to a judgment

14  of a state court, a determination of a factual issue made by a

15  state court shall be presumed to be correct; the petitioner has

16  the burden of producing clear and convincing evidence to rebut

17  the presumption of correctness. Here, Petitioner has not

18  rebutted the presumption.

19      Further, this Court will review the state court's last

20  reasoned decision on the merits of a claim. A state court has

21  adjudicated a claim on the merits within the meaning of § 2254(d)

22  when it decides the petitioner's right to relief on the basis of

23  the substance of the constitutional claim raised, rather than

24  denying the claim because of a procedural or other rule

25  precluding state court review of the merits. Lambert v.

26  Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).

27      Here, the DCA decided both of Petitioner's claims on the

28  basis of their substance, and thus the DCA's decision was a

9

decision on the merits.  However, the later decision of the
California Supreme Court denying Petitioner's petition for
discretionary review of the DCA's decision was not a decision on
the merits, but rather was only a determination that the
California Supreme Court would not consider the case on the
merits.  Williams v. Cavazos, 646 F.3d 626, 636 (9th Cir. 2011),
cert. grtd. in part,[2] Cavazos v. Williams, -- S.Ct. --, 2012 WL
104740 (No. 11-465, U.S. Jan 13, 2012) (citing Harrington v.
Richter, - U.S. -, 131 S.Ct. 770, 784-85 (2011); Cal. R. Ct.
8.500; and Campter v. Workers' Comp. Appeals Bd., 3 Cal.4th 679
(1992)).  There is a rebuttable presumption that where there is
one reasoned state judgment rejecting a federal claim, a later
unexplained order upholding the judgment or rejecting the same
claim rests upon the same ground.  Ylst v. Nunnemaker, 501 U.S.
797, 801-02 (1991).

Thus, this Court will "look through" the state supreme
court's denial of discretionary review to the DCA decision, which
was the last reasoned state court decision.  Id. at 803-04;
Williams v. Cavazos, 646 F.3d at 636; Taylor v. Maddox, 366 F.3d
992, 998 n.5 (9th Cir. 2004).

V.  Sufficiency of the Evidence

Petitioner argues that the evidence was insufficient to
support the finding that Petitioner violated Cal. Pen. Code § 246
by discharging a firearm at an occupied building.  He contends
that although he was outside the store when he discharged the

---

[2] Certiorari was granted as to the limited issue of whether a habeas petitioner's claim has been "adjudicated on the merits" for purposes of 28 U.S.C. § 2254(d) where the state court denied relief in an explained decision but did not expressly acknowledge a federal-law basis for the claim.  Id.

firearm, he was standing so close to the open doorway of the store that it was as if he were inside the store and thus had not fired at the building.

A. Legal Standards

To determine whether a conviction violates the constitutional guarantees of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light that is the most favorable to the prosecution. Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008. It must be recognized that it is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict. Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008. The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence. United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v.

11

1  Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see, Jones v. Wood,

2  207 F.3d at 563.  The court must base its determination of the

3  sufficiency of the evidence from a review of the record.  Jackson

4  at 324.

5       The Jackson standard must be applied with reference to the

6  substantive elements of the criminal offense as defined by state

7  law.  Jackson, 443 U.S. at 324 n.16;  Windham, 163 F.3d at 1101.

8  Further, under the AEDPA, federal courts must apply the standards

9  of Jackson with an additional layer of deference.  Juan H. v.

10  Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks

11  whether the state court decision being reviewed reflected an

12  objectively unreasonable application of the Jackson standards to

13  the facts of the case.  Id. at 1275.

14         B.  The State Court Decision

15       The DCA's decision concerning the sufficiency of the

16  evidence was as follows:

17       Saesee contends there was insufficient evidence to
        support his conviction for shooting at an occupied
18       building. Specifically, he contends he did not shoot
        "at" the occupied building, as required by section 246,
19       because "his position at the time of the shooting was
        essentially the same as if he had been fully inside the
20       store itself," since he was standing at the entrance to
        the store when he fired the gun and the shot was fired
21       through the open doorway. Alternatively, Saesee
        contends that even if he was standing outside the store
22       when he fired the shot, the evidence still was
        insufficient to show he fired at the building because
23       there was no evidence he intended to strike the
        building or of a reasonable likelihood the shot he
24       fired would strike the building itself, and no evidence
        he acted with a conscious disregard of the possibility
25       his shot would strike another individual or the
        building itself. We disagree.
26
        In reviewing a claim of insufficiency of the evidence,
27       we consider the entire record in a light most favorable
        to the People and determine whether it contains
28       substantial evidence-i.e. evidence that is reasonable,

credible, and of solid value-such that a reasonable trier of fact could have found the required elements beyond a reasonable doubt. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1083, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

Section 246 is violated when a person intentionally discharges a firearm either directly at a proscribed target (e.g. an occupied vehicle or inhabited dwelling house) or in close proximity to the target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it. (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1361 (*Overman*).) No specific intent to strike the target, kill or injure persons, or achieve any other result beyond shooting at or in the general vicinity or range of the target is required. (*Ibid.*) "The defendant's conscious indifference to the probability that a shooting will achieve a particular result is inferred from the nature and circumstances of his act." (*Id.* at pp. 1356-1357.)

The statute prohibits shooting at the specified targets from the outside. In *People v. Stepney* (1981) 120 Cal.App.3d 1016 (*Stepney*) the defendant forced his way into the victim's home, demanded money, and while standing in the living room, fired his gun at the television set to prove he was "'not playing any games.'" (*Id.* at 1018.) The appellate court interpreted section 246, which prohibits shooting at an inhabited dwelling, as not including a shooting that occurred inside the building. The defendant's conviction under section 246 was not supportable because he did not fire the gun at the house. (*Stepney, supra,* at p. 1021.)

Although Saesee recognizes the evidence shows that he was standing outside the store when he fired the shot, he asserts that his firearm should be deemed "within the boundaries of the occupied building" because he was standing at the threshold or entrance of the store with his hand at or near the path of the open doorway, there were no doors or barriers between himself and the victim at the time of the shooting, and the shot was fired through the open doorway. From this evidence, Saesee argues "his position at the time of the shooting was essentially the same as if he had been fully inside the store itself." Saesee urges us to look at the burglary statute, which requires an "entry" into a dwelling (§ 459), and cases which state this element is satisfied if any part of the intruder's body or instrument the intruder is holding is inside the premises (*People v. Failla* (1966) 64 Cal.2d 560, 569), and reasons that since a burglary is committed when the plane of any barrier to the premises is broken, "in the context of section 246 having any part of the firearm

inside the entryway of the occupied building at the time of the discharge of the weapon should constitute shooting inside the building, rather than shooting 'at' the building."

Saesee's argument fails because the jury easily could conclude from the surveillance video that both Saesee and the firearm he carried were entirely outside of the store and its entryway when he discharged the firearm. Moreover, there is sufficient evidence from which the jury reasonably could have found that he fired the shot in close proximity to the store, since he was standing directly outside the door to the store when he fired the shot, under circumstances showing a conscious disregard for the probability that the bullet would strike the building or persons in or around it, i.e. he fired as the door was closing, with another person standing between him and Fernandez, and without regard to the possibility the bullet would strike persons inside the store. That the shot was fired through an open doorway does not amount to evidence he was inside the store when he fired the gun.

Contrasting his case to *People v. Chavira* (1970) 3 Cal.App.3d 988, where the defendant fired multiple shots at people standing outside an occupied building, and *People v. Cruz* (1995) 38 Cal.App.4th 427 (*Cruz*), where the defendant shot an officer who was standing inside a building through the building's glass door, Saesee points out that he fired the weapon only once, he aimed directly at his intended victim, there were no barriers between himself and the victim, and his shot struck the victim in the chest. From this, Saesee reasons there was no evidence it was likely his shot would strike the building or that he acted in conscious disregard of the possibility the shot would strike another individual or the building.

The evidence established that Saesee fired the weapon directly at Fernandez as he stood inside the store. The shooting was in such close proximity to the inhabited store that there was a very real risk the store, or persons inside it, might be hit. That the trajectory of the shot did not present a risk of hitting the store or another person, or that it was reasonably probable the bullet would hit someone other than the intended victim, is of no consequence; instead, it is his firing the shot in close proximity to the human targets in the store that shows his conscious indifference to the risk of hitting the store or the people within it. (*Overman*, *supra*, 126 Cal.App.4th at pp. 1356-1357.) On these facts, the jury was entitled to conclude Saesee was aware of the probability the shot could hit the store, or persons inside it, and was consciously indifferent to this result.

1   In sum, the record contains substantial evidence Saesee
    shot at an occupied building to support his conviction
2   of section 246.

3   (LD G, 6-9.)

4           C.   Analysis

5       Cal. Pen. Code § 246 punishes any person "who shall

6   maliciously and willfully discharge a firearm at an inhabited

7   dwelling house" or "occupied building."  Cal. Pen. Code § 246.

8   In a habeas corpus proceeding, this Court is bound by the

9   California Supreme Court's interpretation of California law

10  unless it is determined that the interpretation is clearly

11  untenable and amounts to a subterfuge to avoid federal review of

12  a deprivation by the state of rights guaranteed by the

13  Constitution.  See, Mullaney v. Wilbur, 421 U.S. 684, 691 n.11

14  (1975); Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

15  Thus, this Court is bound by the California decisions holding

16  that although Cal. Pen. Code § 246 is not violated when one

17  shoots from inside a building, People v. Stepney, 120 Cal.App.3d

18  1016 (1981), the statute is violated when a person intentionally

19  discharges a firearm either 1) directly at the proscribed target

20  of the occupied building, or 2) in close proximity to the target

21  under circumstances showing a conscious or reckless disregard for

22  the probability that one or more bullets will strike the target

23  or persons in or around it, People v. Overman, 126 Cal.App.4th

24  1344, 1355-37 (2005) (citing People v. Cruz, 38 Cal.App.4th 427,

25  432-33 (1995)).

26      Here, the videotape showed that Petitioner and Chala went

27  outside when Fernandez and Apalategui charged Chala, and that

28  Petitioner was pursued outside by Apalategui and Mendoza while

15

Fernandez stood in the doorway.  Petitioner pulled a gun while outside the store; Apalategui ran back into the store, and Fernandez and Mendoza ceased holding the door open and backed up into the store as well.  Petitioner fired a single shot into the store through the door's opening as the door was closing, and it hit Fernandez, who fell to the floor of the store.  This direct evidence unequivocally supports a conclusion that Petitioner was located outside the store when he fired the gun at Fernandez.

Further, a spent shell casing was found outside the store's front door, which according to testimony, would have been ejected from a semiautomatic handgun.  Investigation revealed that at the time the shot was fired, Petitioner was standing on a sidewalk area constituting a cement entranceway to the store.  A reasonable trier of fact could infer from this evidence that both Petitioner and his weapon were outside the store when Petitioner fired the shot that paralyzed Fernandez.

Further, a reasonable trier of fact could have concluded that Petitioner either intended to shoot at the building or shot in close proximity to the building under circumstances showing a conscious or reckless disregard for the probability that one or more bullets would strike the building or persons in or around it.  Petitioner fired at a person who was approximately twenty feet away and was inside a building inhabited by several other persons in the immediate vicinity.  Given these circumstances, a rational trier could have concluded that Petitioner 1) was aware of the probability that his shot could hit the store or persons inside it, and 2) was consciously indifferent to this result.  Although other inferences are possible, in applying the Jackson

standard, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  <u>Jackson v. Virginia</u>, 443 U.S. at 319; <u>Jones</u>, 114 F.3d at 1008.

The Court concludes that the state court articulated the correct legal standards of <u>Jackson v. Virginia</u> and applied them in an objectively reasonable manner.  Accordingly, Petitioner has not shown that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.

It will thus be recommended that Petitioner's claim concerning the sufficiency of the evidence be denied.

V.   <u>Instructional Error</u>

Petitioner argues that his constitutional rights were violated by the TCSC's failure to instruct the jury on the definition of a semiautomatic firearm within the meaning of Cal. Pen. Code § 245(b).[3]  Petitioner contends that the prosecution was, therefore, allowed to establish guilt without proving all the essential elements of the charged offense.

A.   <u>Legal Standards</u>

When a conviction is challenged in a proceeding pursuant to 28 U.S.C. § 2254 on the basis of error in jury instructions, a district court's review is informed by two clearly established legal principles.

First, the United States Supreme Court has held that a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus

---

[3]Cal. Pen. Code § 245(b) provides that any person who commits an assault upon the person of another with a semiautomatic firearm shall be punished by imprisonment in the state prison for three, six, or nine years.

proceedings.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires a violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3).

Second, the only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process.  Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see, Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (noting that it must be established not merely that the instruction was undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).  Further, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Estelle, 502 U.S. at 72.

The Supreme Court has held that harmless error analysis applies to instructional errors as long as the error at issue does not categorically vitiate all the jury's findings.  Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt instructions as constituting structural error)).  In Hedgpeth v. Pulido, the Court cited with approval its previous decisions that

various forms of instructional error were trial errors subject to harmless error analysis, including errors of omitting or misstating an element of the offense or erroneously shifting the burden as to an element.  Hedgpeth, 555 U.S. 60-61.

With respect to the specific instructional error present in the instant case, omission of an instruction on an element of an offense constitutes a violation of the Sixth Amendment right to jury trial and a due process violation, but it is a trial error subject to harmless error analysis.  Neder v. United States, 527 U.S. 1 (1999).  Such an error is harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict.  California v. Roy, 519 U.S. 2, 339 (9th Cir. 1996) (remanding for a determination of whether a failure to instruct the jury that liability for aiding and abetting required an intent or purpose to aid the confederate's crime was harmless); Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  Where a judge in a habeas proceeding is in grave doubt as to the harmlessness of the error, the petitioner must prevail. California v. Roy, 519 U.S. at 5.

    B.   The State Court Decision

The DCA's decision concerning Petitioner's claim of instructional error was as follows:

> Saesee was charged with and convicted of assault with a semiautomatic firearm. (§ 245, subd. (b).) The jury was instructed with a modified version of CALCRIM No. 875, in relevant part, that "[t]o prove the defendant is guilty of this crime, the People must prove that first, the defendant did an act with a semiautomatic firearm that by its nature would directly and probably result in the application of force to a person; second, the defendant did that act willfully; third, when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its

nature would directly and probably result in the application of force to someone; and four, when the defendant acted, he had the present ability to apply force with a semiautomatic firearm; five, the defendant did not act in self-defense or in defense of someone else...." The jury also was instructed with another modified version of CALCRIM No. 875 on the lesser included offense of assault with a firearm (§ 245, subd. (a)(2)). While both instructions defined the term "firearm" as "any device designed to be used as a weapon from which a projectile is discharged or expelled through a barrel by the force of explosion or other form of combustion," neither defined the term "semiautomatic."

Although he did not object to the instruction at trial, Saesee now argues the instruction on assault with a semiautomatic firearm was improper because the omission of a definition of "semiautomatic" was prejudicial failure to instruct on an element of the offense. We conclude any error was harmless.

The jury must be instructed on the elements of an offense, and further explanatory instructions must be given "where a term used in an instruction has a specific or technical meaning peculiar to the law...." (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1318-1319.) Courts should clarify a term if it is one not commonly understood by those familiar with the English language. (*See People v. Griffin* (2004) 33 Cal.4th 1015, 1022-1023 (*Griffin*).)

Section 245, subdivision (b), does not define "semiautomatic firearm." Our Supreme Court has described that term to mean one that "'fires once for each pull on the trigger and reloads automatically, but requires the shooter to release the trigger lever before another shot can be fired.'" (*In re Jorge M.* (2000) 23 Cal.4th 866, 874-875, fn. 4, quoting Walter, Rifles of the World (2d ed.1998) p. 498.) This is consistent with a typical dictionary definition of "semiautomatic": "of a firearm: employing gas pressure or force of recoil and mechanical spring action to eject the empty cartridge case after the first shot and load the next cartridge from the magazine but requiring release and another pressure of the trigger for each successive shot." (Webster's 10th Collegiate Dict. (1999) p. 1063.)

Though "semiautomatic firearm" does not appear to have a unique legal meaning that differs from its use in other contexts, we doubt it is a term so commonly understood by those familiar with the English language that it requires no definition or explanation. (*See Griffin, supra*, 33 Cal.4th at p. 1023.) Assuming

1    without deciding that it should ordinarily be defined
2    for jurors, the failure to do so in this case was
   harmless beyond a reasonable doubt. *(Chapman v.*
3    *California* (1967) 386 U.S. 18, 24.)

4    Officer Torres explained that a semiautomatic firearm
   ejects a shell casing when it is fired and has a metal
5    slide on the top that can be moved back and forth by
   hand, which ejects a round. A spent casing was found in
6    front of the store after the shooting and a .38 caliber
   bullet consistent with the casing was found in a box on
7    a display rack in the store. Theeda testified that when
   she was driving to the mini-mart, Saesee had a gun that
8    had a clip in the handgrip and that he pulled something
   on the top of the gun with his hand using a sliding
9    motion, which made a clicking sound like racking a
   round. Two bullets, the same brand as the bullet and
10    casing found at the scene, were found in the back seat
   of Theeda's car where Saesee had been sitting. Although
11    the gun used in the shooting was not recovered, from
   the uncontested evidence a reasonable jury could have
12    found Saesee guilty beyond a reasonable doubt of
   assault with a semiautomatic firearm.

13 (LD G, 9-11.)

14        C. <u>Analysis</u>

15    The state court decision reflects that the DCA recognized

16 that the failure to define a semiautomatic firearm would be

17 treated as constitutional error, and the court proceeded to

18 determine that it was harmless.  The error affected only the

19 element of a semiautomatic weapon relating to the charge of

20 assault pursuant to Cal. Pen. Code § 245(b); it was not an error

21 that categorically vitiated all the jury's findings.

22    Review of the state court decision as well as the evidence,

23 argument, and instructions results in a conclusion that the error

24 did not have a substantial and injurious effect or influence in

25 determining the jury's verdict.  The jury was instructed that

26 words and phrases not specifically defined in the instructions

27 were to be applied using their ordinary, everyday meanings.  (4

28 RT 333.)  Officer Torres testified about a semiautomatic handgun,

describing the metal slide on top that moves back and forth when a shot is fired and another round is chambered.  He explained the operations of loading and pulling back the slide, and informed the jury that if a round has already been chambered and the slide is pulled back, a round will be ejected, and another one will be chambered.  What Officer Torres described as a semiautomatic handgun was consistent with the dictionary definition of a semiautomatic firearm as well as the California Supreme Court's definition.  Theeda had testified that in her car, Petitioner twice pulled back on something on top of the gun with a sliding motion.  The police identification technician found two live bullets inside the vehicle Theeda was driving that night that were consistent with the bullet found inside the store and the casing.  This is the only evidence cited by the parties concerning the gun, and Petitioner did not contest this evidence. (4 RT 330.)  Thus, the uncontradicted evidence concerning the gun was consistent with the ordinary definition of a semiautomatic firearm.

The only closing argument concerning the gun was likewise consistent with the evidence.  The prosecutor argued that Petitioner's use of a semiautomatic firearm was proved by Theeda's testimony concerning Petitioner's racking the gun twice, Officer Torres's testimony that a bullet will be ejected when a gun with bullets in the chambers is racked, and the technician's discovery of two live bullets in Theeda's car.  (4 RT 361, 370-71.)

///

The record reveals no basis for a conclusion that the jury

1   was confused or misled by the absence of the instruction.  It

2   thus does not appear that the omission of the instruction

3   defining a semiautomatic firearm had any substantial or injurious

4   effect on the verdict.  Likewise, it did not infect the entire

5   trial or result in a violation of due process.

6        The court concludes that the state court's decision was not

7   contrary to, or an unreasonable application of, clearly

8   established federal law.  Thus, Petitioner has not met his burden

9   of showing that he is entitled to relief on this claim.

10  Accordingly, it will be recommended that Petitioner's claim

11  concerning instructional error be denied.

12       VI.  <u>Certificate of Appealability</u>

13       Unless a circuit justice or judge issues a certificate of

14  appealability, an appeal may not be taken to the Court of Appeals

15  from the final order in a habeas proceeding in which the

16  detention complained of arises out of process issued by a state

17  court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537

18  U.S. 322, 336 (2003).  A certificate of appealability may issue

19  only if the applicant makes a substantial showing of the denial

20  of a constitutional right.  § 2253(c)(2).  Under this standard, a

21  petitioner must show that reasonable jurists could debate whether

22  the petition should have been resolved in a different manner or

23  that the issues presented were adequate to deserve encouragement

24  to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336

25  (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

26  certificate should issue if the Petitioner shows that jurists of

27  reason would find it debatable whether the petition states a

28  valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

VII.  Recommendations

Accordingly, it is RECOMMENDED that:

1)  The petition for writ of habeas corpus be DENIED; and

2)  The Clerk be DIRECTED to enter judgment for Respondent; and

3)  The Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the

24

United States District Court Judge assigned to the case, pursuant
to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of
the Local Rules of Practice for the United States District Court,
Eastern District of California.  Within thirty (30) days after
being served with a copy, any party may file written objections
with the Court and serve a copy on all parties.  Such a document
should be captioned "Objections to Magistrate Judge's Findings
and Recommendations."  Replies to the objections shall be served
and filed within fourteen (14) days (plus three (3) days if
served by mail) after service of the objections.  The Court will
then review the Magistrate Judge's ruling pursuant to 28 U.S.C.
§ 636 (b)(1)(C).  The parties are advised that failure to file
objections within the specified time may waive the right to
appeal the District Court's order.  Martinez v. Ylst, 951 F.2d
1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    March 14, 2012              /s/ Sheila K. Oberto**
                                UNITED STATES MAGISTRATE JUDGE

25